# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **JASPER PERDUE,** | ) |
| | ) |
| Plaintiff, | ) Case No. 7:21CV00240 |
| | ) |
| v. | ) **OPINION AND ORDER** |
| | ) |
| **WARDEN STREEVAL,** | ) JUDGE JAMES P. JONES |
| | ) |
| Defendant. | ) |

*Jasper Perdue, Pro Se Plaintiff; Justin M. Lugar, Assistant United States Attorney, Roanoke, Virginia, for Defendant.*

Jasper Perdue, a federal inmate proceeding pro se, filed this civil rights action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Perdue alleges that the defendant violated his Eighth Amendment rights by failing to provide him appropriate medical care for a hand injury. After review of the record, I conclude that the defendant's Motion to Dismiss must be granted.

I.   BACKGROUND.

At all times relevant to Perdue's claims, he was incarcerated at the United States Penitentiary Lee ("USP Lee"), located in this judicial district. In his unverified Complaint, Perdue alleges that on May 28, 2020, he got into a fight with another inmate and injured his right hand. Officials transported Perdue to a local

medical clinic for an X ray. The medical providers allegedly determined that he had suffered a "boxer's break" in his right hand. Compl. 1, ECF No. 1. The doctor at the clinic allegedly told Perdue "if [he] didn't rec[ei]ve pins to make sure the bone heals correctly, that [he] would have pains with certain movements for the rest of [his] 'Life.'" *Id.* Perdue agreed to have the recommended surgery. The medical providers then placed a splint on his hand and allegedly scheduled surgery for him.[1]

Back at the prison, after two weeks passed, Perdue filed a request to staff about his hand surgery. Eight weeks later, staff allegedly took Perdue to a different clinic, where providers performed another X ray. After review of the X ray results, providers told Perdue that his hand was "80% healed so [he] didn't need the surgery any longer." *Id.* Perdue alleges that he is "experiencing pains in [his] hand with certain movement." *Id.*

Perdue filed this action in April 2021 against USP Lee Warden Streeval, seeking monetary compensation. The Warden has filed a Motion to Dismiss, or in

---

[1] In support of these allegations, Perdue submits an incomplete photocopy of a medical record, dated June 4, 2020. Resp. 2, ECF No. 24. This report states "Fracture of metacarpal bone – Right." *Id.* It indicates that providers placed a splint on the patient's right arm and prescribed Ibuprofin for seven days. In another section, the report states:

> Mr. Perdue presents with a mildly displaced, intraarticular fracture of the 4th metacarpal. We've discussed treatment options and recommend CRPP to reestablish anatomic alignment and attempt to minimize the risks of stiffness, arthritis, and pain. We will splint the patient today and proceed with scheduling with Dr. Duncan.

*Id.*

the Alternative, Motion for Summary Judgment. He argues that the Complaint fails to show his personal involvement in Perdue's medical care and otherwise fails to state any actionable claim against him.[2] Perdue has responded to the motion, making it ripe for consideration.

## II. DISCUSSION.

In limited circumstances, an individual may bring a civil suit under *Bivens* against a federal officer for damages stemming from a constitutional violation. A *Bivens* claim is analogous to a claim brought against state officials under 42 U.S.C. § 1983, and therefore, caselaw involving § 1983 claims is applicable in *Bivens* actions. *Farmer v. Brennan*, 511 U.S. 825, 839–47 (1994).

The purpose of *Bivens* liability is to "deter individual federal officers from committing constitutional violations." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001). Thus, *Bivens* liability is personal, based on each individual officer's constitutional violations. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). A supervisory official in a *Bivens* case cannot be held vicariously liable for the

---

[2] The defendant also argues that Perdue failed to exhaust available administrative remedies as required under 42 U.S.C. § 1997e(a) before filing this lawsuit. Indeed, the evidence in the record indicates that Perdue has never filed any administrative remedies since his incarceration in the Federal Bureau of Prisons. Perdue claims that for various reasons that administrative remedies were not available to him at USP Lee. Because I find for other reasons that Perdue's case must be dismissed, I need not resolve whether remedies were available.

misconduct of subordinate employees. Rather, to hold a supervisory official liable under *Bivens*, the plaintiff must state facts showing "that the official charged acted personally in the deprivation of the plaintiff's rights." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (internal quotation marks and citation omitted). More specifically, to state a viable claim of supervisory liability, the plaintiff must state facts showing that the defendant "had personal knowledge of and involvement in the alleged deprivation of [the plaintiff's] rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985).

The only defendant Perdue names in his *Bivens* Complaint is the USP Lee Warden. The defendant asserts that Perdue did not allege any personal involvement by the Warden in the alleged deprivation of medical care. I cannot agree. Perdue asserts that the Warden did "not [get] on top of his staff after [Perdue] made the issue known in a 'Compassionate Release Request' [Perdue] sent to him." Compl. 2, ECF No. 1. Liberally construing Perdue's pro se pleadings, he has alleged that he made the warden aware of the surgery recommendation and staff's failure to provide that recommended treatment to prevent future hand pain, but the Warden took no action to ensure access to that recommended care. Therefore, I conclude that dismissal for lack of alleged personal involvement of the defendant is not proper here.

The defendant also argues that Perdue's allegations fail to state any constitutional claim against the Warden. With this contention, I must agree.

"A prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  An inmate alleging a deliberate indifference claim related to medical care must establish that his medical condition was objectively serious — that is, "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (citation omitted).  The inmate must also show that the defendant official subjectively knew of and disregarded an excessive risk to the inmate's health or safety.  *Jackson*, 775 F.3d at 178.

> This deliberate indifference standard is not satisfied by "a showing of mere negligence," *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999), a "mere error of judgment or inadvertent failure to provide medical care," *Boyce v. Alizaduh*, 595 F.2d 948, 953 (4th Cir. 1979) (internal quotations omitted), *abrogated on other grounds by Neitzke v. Williams*, 490 U.S. 319, 109 S. Ct. 1827, 104 L.Ed.2d 338 (1989), or mere disagreement concerning "[q]uestions of medical judgment," *see Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975).

*Germain v. Shearin*, 531 F. App'x 392, 395 (4th Cir. 2013) (unpublished).  Furthermore, supervisory prison officials are entitled to rely on the professional judgment of trained medical personnel to determine the appropriate course of treatment for an inmate.  *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990) (overturned on other grounds by *Farmer*, 511 U.S. at 840).

Perdue's broken hand is a serious medical need that meets the objective prong of this constitutional standard. But Perdue has not stated facts showing that the Warden or anyone at USP Lee was deliberately indifferent to his medical needs. USP Lee staff did not ignore Perdue's hand injury. He admits that he received extensive, continuing medical care — an initial X ray, a splint, pain medication, evaluation and consultation with a medical specialist, a second X ray eight weeks later, and consultation over its results with a specialist. Even assuming without finding that the Warden knew of Perdue's hand injury and the recommendation for surgery after the initial X ray, later events intervened. The Warden could rightfully have relied on the medical provider's later assessment that the second X ray reflected no medical need for Perdue to undergo hand surgery. *Id.* Neither the fact that Perdue agrees with the earlier provider's recommendation for surgery, nor the fact that two medical professionals allegedly disagreed at different times based on different evidence about Perdue's need for hand surgery, demonstrates any deliberate indifference on the part of the Warden. *Russell*, 528 F.2d at 319 ("Questions of medical judgment are not subject to judicial review."). I must grant the Motion to Dismiss on the ground that Perdue's allegations do not state a claim that the Warden was deliberately indifferent to his serious medical need in violation of his Eighth Amendment.

### III.  CONCLUSION.

For the stated reasons, it is **ORDERED** that **t**he Motion to Dismiss, ECF No. 20, is GRANTED.

A separate Judgment will be entered herewith.

    ENTER:   September 6, 2022

    /s/  JAMES P. JONES
    Senior United States District Judge